# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF INDIANA

## EVANSVILLE DIVISION

| | |
|---|---|
| SHANDA MARSHALL, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br><br><br>MIDWESTERN PET FOODS, INC.,<br><br>    Defendants. | Case No. 3:21-cv-50<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Shanda Marshall, on behalf of herself and all others similarly situated, brings this Class Action Complaint against Defendant Midwestern Pet Foods, Inc. and alleges upon personal knowledge as to her own experience, her counsel's investigation, and upon information and belief as to all other matters the following:

## NATURE OF ACTION

1.      Midwestern Pet Foods, Inc. ("Defendant") manufactures, distributes, advertises, and sells pet food products nationwide under the brands: Sportmix, Sportmix CanineX, Earthborne Holistic, Unrefined, Pro Pac, Venture, Wholesomes, Sportstrail, Splash, and Nunn Better.

2.      On or about December 30, 2020, Defendant announced a recall of certain of its dog and cat food formulas sold under the Sportmix brand (Sportmix High Energy, Sportmix Energy Plus, and Sportmix Original Cat). The recall was instituted, in cooperation with the

1

United States Food and Drug Administration ("FDA"), after dozens of reports of illnesses and deaths in dogs associated with pets' consumption of Defendant's pet food, caused by excessive levels of aflatoxins - potentially fatal toxins produced by the mold *Aspergillus flavus*. Pets are highly susceptible to aflatoxin poisoning because, unlike people, who eat a varied diet, pets generally eat the same food continuously over extended periods of time. If a pet's food contains aflatoxins, the toxins could accumulate in the pet's system as they continue to eat the same food.[1]

3.      Symptoms of aflatoxin poisoning include: sluggishness, loss of appetite, vomiting, jaundice (yellowish tint to the eyes, gums or skin due to liver damage), unexplained bruising or bleeding, and/or diarrhea.[2]

4.      In its December 30, 2020 announcement, Defendant requested that all then-identified as affected Sportmix products be immediately removed from all retailer inventories and shelves. On January 11, 2021, Defendant vastly expanded its recall to cover all pet food products made with corn ingredients at its Chickasha, Oklahoma facility and with expiration dates prior to July 9, 2022. These products include:[3]

| | |
|---|---|
| Pro Pac Adult Mini Chunk, 40 lb. bag | Sportmix Energy Plus, 44 lb. bag |
| Pro Pac Performance Puppy, 40 lb. bag | Sportmix Energy Plus, 50 lb. bag |
| Splash Fat Cat 32%, 50 lb. bag | Sportmix Stamina, 44 lb. bag |
| Nunn Better Maintenance, 50 lb. bag | Sportmix Stamina, 50 lb. bag |
| Sportstrail, 50 lb. bag | Sportmix Bite Size, 40 lb. bag |
| Sportmix Original Cat, 15 lb. bag | Sportmix Bite Size, 44 lb. bag |
| Sportmix Original Cat, 31 lb. bag | Sportmix High Energy, 44 lb. bag |
| Sportmix Maintenance, 44 lb. bag | Sportmix High Energy, 50 lb. bag |
| Sportmix Maintenance, 50 lb. bag | Sportmix Premium Puppy, 16.5 lb. bag |
| Sportmix High Protein, 50 lb. bag | Sportmix Premium Puppy, 33 lb. bag[4] |

---

[1] https://www.fda.gov/animal-veterinary/outbreaks-and-advisories/fda-alert-certain-lots-sportmix-pet-food-recalled-potentially-fatal-levels-aflatoxin#problem

[2] https://www.fda.gov/animal-veterinary/animal-health-literacy/aflatoxin-poisoning-pets#signs

[3] The affected products identified to date are collectively referenced herein as the "Pet Food Products."

[4] https://www.fda.gov/animal-veterinary/outbreaks-and-advisories/fda-alert-certain-lots-sportmix-pet-food-recalled-potentially-fatal-levels-aflatoxin

5.      As of January 21, 2021, the FDA was aware of more than 110 pets that have died and more than 210 pets that are sick after eating pet foods manufactured by Defendant.[5]

6.      On February 5, 2021, the FDA issued a devastating Inspectional Observations report to Defendant's Chickasha Plant Manager, Dylan R. Woods, finding:

- You [Defendant] did not identify and implement preventive controls to ensure that any hazards requiring a preventive control are significantly minimized or prevented.

- Your preventive controls failed to adequately control the hazard of aflatoxin in your firm's finished pet food products […].

- You did not evaluate each known or reasonably foreseeable hazard for each type of animal food You manufacture, process, pack or hold in your facility.

- Your Preventative Control [redaction] at receiving includes on-site sample collection and analysis for aflatoxin in in-coming corn shipments but you did not implement your Preventative Control because you did not follow the protocol required to achieve results from the testing equipment you were using, both before 8/24/20 and after 8/25/20.

- You did not conduct a reanalysis of your food safety plan as appropriate.

- Specifically, You have acknowledged that after implementing a different Aflatoxin testing system on 8/25/20, you did not conduct a reanalysis of your Food Safety Plan to reflect the replacement of the old testing system or to reflect the addition of new equipment, or to require the new protocol to be followed for sample collections and preparation, instructions for conducting new testing, equipment to be used, etc.

7.      A copy of the FDA's Inspectional Observations report is attached to this Complaint as Exhibit A. The FDA's findings were jointly issued by two FDA inspectors after

_____

[5] *Id.*

conducting 19 inspections of Defendant's facilities between December 31, 2020 and February 5, 2021.[6]

8.    The FDA's recent findings are specific and cannot more clearly lay bare Defendant's reckless, negligent, and careless conduct in placing lethal, adulterated Pet Food Products into commerce for consumption by Plaintiff's and Class Members' beloved pets.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over the claims alleged in this Complaint pursuant to the Class Action Fairness Act, 28 U.S.C. §1332 because: (a) this is a class action in which the matter or controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (b) the number of members of the proposed Class exceeds 100; and (c) a significant portion of members of the proposed Class are citizens of different states than the state of citizenship of the Defendant. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10.    This Court has personal jurisdiction over Defendant because Defendant is headquartered in the State of Indiana, regularly conducts business in this Judicial District, and has extensive contacts with this forum.

11.    Venue is proper in the Southern District of Indiana under 27 U.S.C. § 1391 because: Defendant transacts substantial business in this District; Defendant's corporate headquarters are located in this District; and a substantial portion of the acts or omissions complained of herein occurred in this District.

---

[6] The FDA is continuing its investigation into Defendant's products manufactured at the Chickasha facility, with the cooperation of the state departments of agriculture for Missouri, Oklahoma, Arkansas, Kansas, Kentucky, Louisiana, New Mexico, Oregon, Texas, and Washington. *See* https://www.fda.gov/animal-veterinary/outbreaks-and-advisories/fda-alert-certain-lots-sportmix-pet-food-recalled-potentially-fatal-levels-aflatoxin

## PARTIES

12.    Plaintiff Shanda Marshall is a citizen of New York and resident of Portageville, New York.

13.    Plaintiff purchased and fed Defendant's Sportmix Premium High Energy and Sportmix Premium Energy Plus formulas to her four French bulldogs - Paris, Candy, Opal, and Merle Girl. She also fed these two recalled products to her 2-year-old Chinese Tibetan Mastiff – Nicky. Plaintiff purchased the products from Chewy.com between approximately June 2020 and December 2020 in 50 lb. bags, spending an approximate total amount of $2,376.14.

14.    Prior to making her decision to purchase Defendant's Pet Food Products, Plaintiff read and relied upon Defendant's packaging and representations.

15.    The following image depicts the packaging of Defendant's Sportmix Premium Energy Plus formula:



16.    The following image depicts the packaging of Defendant's Sportmix Premium High Energy formula:



17.    Prior to Defendant's initial recall announcement, Plaintiff was not aware nor had any knowledge that Defendant's Pet Food Products might contain excessive levels of aflatoxin, or that Defendant did not adequately test or inspect its Pet Food Products before selling them. Defendant uniformly omitted these material facts on its package labels. Plaintiff would not have purchased Defendant's Pet Food Products or fed them to Paris, Candy, Opal, Merle Girl, and Nicky had she known that the food might contain excess levels of aflatoxin, or that Defendant did not adequately test or inspect its food before selling it to consumers, or follow its own internal standards or controls, like the Preventative Control or Food Safety Plan.

18.    Before consuming Defendant's Sportmix Premium High Energy and Sportmix Premium Energy Plus foods, Plaintiff's pets were consistently in good health.

19.    After consuming these products, Paris, Candy, Opal, Merle Girl, and Nicky all experienced diarrhea, sluggishness, and loss of appetite. Opal, in particular, also experienced frequent vomiting. Opal and Nicky suddenly and unexpectedly passed away after consuming Defendant's Pet Food Products.

20.     In or about December 2020, Paris gave birth to a litter of six puppies. All of Paris's puppies died shortly after birth, and had displayed inexplicable bruising on their stomachs.

21.     In or about October 2020, Candy gave birth to a litter of three French bulldog puppies. All of Candy's puppies inexplicably died shortly after birth.

22.     In or about December 2021, Opal gave birth to a litter of eight French bulldog puppies. All of Opal's had deformities at birth, including severe cleft palates, as shown below, and died soon thereafter.

 

23.     Opal died in or about January 2021.

24.     In or about February 2021, Merle Girl's litter of six French bulldog puppies were born by cesarean delivery. Three of the puppies were stillborn. Merle Girl's other three puppies died shortly thereafter.

25.     Nicky experienced a severe loss of appetite and died suddenly in or about November 2020, after six months of consuming Defendant's Pet Food Products.

26.     Defendant Midwestern Pet Foods, Inc. is a domestic for-profit corporation existing under the laws of the State of Indiana, with its principal executive offices located at 9634 Hedden Road, Evansville, Indiana 47725. Defendants sells its pet food products through specialty retailers throughout the United States, and through online retailers such as Chewy.com and Amazon.com.

## FACTUAL ALLEGATIONS

**Aflatoxins**

27.     Aflatoxins are toxins produced by the mold *Aspergillus flavus* that can lead to life threatening conditions in humans and pets, including acute poisoning (aflatoxicosis), liver cancer, and death. Aflatoxins grow on pet food ingredients such as corn, peanuts, and other grains. The toxins can be present even if there is no visible mold on the pet food.[7] According to the FDA, "[p]ets are highly susceptible to aflatoxin poisoning because, unlike people, who eat a varied diet, pets generally eat the same food continuously over extended periods of time. If a pet's food contains aflatoxins, the toxins could accumulate in the pet's system as they continue to eat the same food."[8]

28.     There is no antidote for aflatoxins. Treatment is usually aimed at removing the food (aflatoxins) source to prevent additional exposure.[9] Extremely severe or rapid-onset cases of aflatoxin poisoning may progress so quickly that the pet dies before receiving any treatment. Pets exposed to non-lethal doses of aflatoxin may survive, but can have long-term health problems, such as liver injury.[10]

---

[7] https://www.fda.gov/animal-veterinary/animal-health-literacy/aflatoxin-poisoning-pets
[8] *Id.*
[9] https://www.fda.gov/animal-veterinary/animal-health-literacy/aflatoxin-poisoning-pets#signs
[10] *Id.*

29.     Defendant has been, or should have been, aware of fatal risk posed by aflatoxin in pet food. Defendant is responsible for implementing, among other things: a) animal food good manufacturing processes, hazard analysis, and risk-based preventative controls; b) a Food Safety Plan, including but not limited to, adequate ingredient quality assurance, safety, and testing protocols for hazardous contaminants; and c) reliable source verification processes.

30.     Contrary to its marketing, and duties owed to Plaintiff and Class members, Defendant utterly failed to satisfy these obligations, resulting in mass distribution of contaminated pet food with devastating consequences to Plaintiff and Class members.

**The Food and Drug Administration's February 5, 2021 Inspection Findings**

31.     The FDA's February 5, 2021 inspection findings shock the conscience. The report (Exhibit A) reveals that Defendant appears to have had some kind of standard operating procedure ("SOP") for aflatoxin testing at least since 2018 and that it apparently decided upon a new protocol in August 2020. While it can be reasonably questioned whether Defendant complied with any adequate protocol at any time, the report reveals that Defendant, among other things: *did not* implement adequate preventive controls to prevent or minimize distribution of contaminated pet food; *did not* adequately control the hazard of aflatoxin in its finished products; *did not* "evaluate each known or reasonably foreseeable hazard for each type of food" it manufactures, processes, packs or stores; *did not* follow its required protocol to achieve proper testing results "before 8/24/20 and after 8/25/20;" *admitted* that it *did not* "conduct a reanalysis of [its] Food Safety Plan to reflect the replacement of the old testing system or to reflect the addition of new equipment, or to require the new protocol to be followed for sample collections and preparation, instructions for conducting new testing."[11]

---

[11] *See* Exhibit A.

**Defendant's Marketing Promises**

32.    Defendant prominently touts the following on its website:[12]

**FAMILY-OWNED SINCE 1926**

At Midwestern Pet Foods, we've been feeding pets for generations. We're a family-owned business now in our fourth generation. Over the years, we've learned a lot about family, pet companions and making high-quality pet food & treats. We still have those same Midwestern values that Grandpa Nunn had back in 1926!

-and-

**USA KITCHENS**

We create our own nutritious dry recipes and treats and prepare our foods in our 4 family-owned kitchens.

33.    Defendant's intended communication to consumers is that its Pet Food Products are prepared with the care of a family member preparing a wholesome meal for their loved ones in a homestyle kitchen. Of course, this depiction could not be more contrary to the FDA February 5, 2021 findings, which confirmed the unfortunate truth suspected at the time the recall was announced.

34.    Moreover, despite Defendant's express appeal to consumers' preference for products originating in the United States, in response to the questions of "[w]here is Sportmix made? and "[a]re there any ingredients from China?", Chewy.com revealed in November 2018:

SPORTMIX sources all ingredients from US suppliers *if ingredients are available*, grown or produced in the US. The lamb meal comes from Australia or New Zealand and the flaxseed comes from Canada. The vitamin premixes are formulated, sourced and blended in the United States by a US company in a human grade facility. *Certain subparts of the vitamin premixes are only available overseas but rest assure* [sic] *their US supplier makes every effort to source from reputable non-Chinese vendors.*[13] (emphasis added).

---

[12] www.midwesternpetfoods.com
[13] www.chewy.com/app/product-question/1344626?productId=179134&answerSort=MOST_HELPFUL

35.     Defendant also boasts on its website that its Pet Food Products are "formulated to meet the nutrition levels established by the AAFCO Dog Food Nutrient Profiles" for maintenance, except for the Puppy Small Bites formula, which Defendant says is "formulated to meet the nutritional levels established by the AAFCO Dog Food Nutrient Profiles" for lactation/gestation and growth of dogs.

36.     Defendant's Sportmix for cats is sold in the single "Original Recipe" formula. Defendant claims on its website that the Original Recipe cat food is "formulated to ensure 100% complete and balanced nutrition for your cat, supplying essential nutrients need to promote strong muscles and bones, a glossy coat and bright eyes." Defendant also claims that Sportmix cat food is "formulated to meet the nutrition levels established by the AAFCO Dog [sic] Food Nutrient Profiles for all life states."

37.     Defendant prominently represents on its Pet Food Products for dogs packaging that the food is "TARGETED NUTRITION FOR DOGS" and "100% Guaranteed for Taste and Nutrition." *See*, *supra*, ¶¶ 22-23. Together and separately, these uniform written messages positively affected Plaintiff's and Class Members' perception and trust in Defendant's Pet Food Products. Moreover, Defendant's omitted the material facts that its Pet Food Products may contain excessive levels of aflatoxin, and were not adequately tested or inspected for aflatoxin.

38.     Plaintiff and all other similarly situated consumers would not have purchased the Pet Food Products, let alone at any premium price, had Defendant not made its materially misleading and deceptive product claims or if it had disclosed its inadequate, or non-existent, testing protocols, and/or the potential or actual presence of contaminants in its Pet Food Products.

39.     As a result of purchases of Defendant's Pet Food Products, Plaintiff and all other similarly situated consumers have incurred substantial expenses, including the cost of the Pet Food Products, veterinary bills, and other related expenses.

**Notice of Breach of Express Warranties**

40.     Defendant had sufficient notice of its of express warranties. Defendant has, and had, exclusive knowledge of the physical and chemical makeup of its Pet Food Products. Defendant also had exclusive knowledge regarding their suppliers, including whether any ingredients contained and/or were at a material risk of containing aflatoxin.

41.     Defendant knew that consumers, such as Plaintiff and the proposed Class would be the end purchasers of its Pet Food Products. Defendant knew that it was targeting and directly marketing to these consumers through its packaging claims and representations.

42.     Defendant intended that consumers, such as Plaintiff and the proposed Class, would consider and rely on their packaging claims and representations when deciding whether to purchase its Pet Food Products.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action on behalf of herself and all those similarly situated under the Federal Rules of Civil Procedure, Rule 23(a), (b)(2), (b)(3), and/or (c)(4). The proposed class is defined as:

> All persons or entities residing in the United States who purchased a Pet Food Product during the Relevant Time Period ("Nationwide Class");

44.     Plaintiff also seeks certification of the following class:

> All persons or entities residing in the State of New York who purchased a Pet Food Product during the Relevant Time Period ("New York Class").

45.    The Nationwide Class and the New York Class are referred to collectively as the "Class." Excluded from the Class are the Defendant; the officers, directors or employees of the Defendant; any entity in which the Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of the Defendant. Also excluded from the Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action.

46.    Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, divided into subclasses, or modified in any other way.

47.    This action has been brought and may properly be maintained as a class action as it satisfies the requirements of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1)-(3).

48.    **Numerosity - Fed. R. Civ. P. 23(a)(1):** Members of the Class are so numerous that individual joinder of all the members is impracticable. The precise number and identification of Class members are unknown to Plaintiff at this time, but can be ascertained through appropriate discovery of Defendant and/or retailer records. The Class is believed to comprise hundreds of thousands of Pet Food Product purchasers.

49.    **Existence and Predominance of Common Questions of Fact and Law – Fed. R. Civ. P. 23(a)(2); 23(b)(3)**: Common questions of fact and law exist as to all Class members which predominate over all questions affecting only individual Class members. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member, include, without limitation:

(a)     whether Defendant failed to properly test and apply adequate quality controls in the manufacture, distribution, and sale of the Pet Food Products;

(b)     whether Defendant failed to disclose material facts, including but not limited to the potential or actual presence of aflatoxin, in connection with its marketing and sale of the Pet Food Products;

(c)     whether Defendant manufactured, distributed, advertised, and sold adulterated and/or contaminated pet food to consumers;

(d)     whether Defendant's conduct violated applicable consumer protection laws in the course of its manufacture, distribution, and sale of the Pet Food Products;

(e)     whether Defendant's conduct constitutes a breach of express warranty;

(f)     whether Defendant's conduct constitutes a breach of implied warranty;

(g)     Whether Plaintiff and the other members of the Class are entitled to, among other things, injunctive relief, and if so, the nature and extent of such injunctive relief;

(h)     The appropriate class-wide measure of damages; and

(i)     Whether Defendant is liable for attorneys' fees and costs.

50.     **Typicality – Fed. R. Civ. P. 23(a)(3):** Plaintiff is a member of the Class, and her claims are typical of the claims of the members of the Class. The claims asserted by Plaintiff in this action arise from the same course of conduct by the Defendant and the relief sought is common.

51.     **Adequacy – Fed. R. Civ. P. 23(a)(4):** Plaintiff is an adequate representative of the Class because she is a member of the Class and her interests do not conflict with the interests

of the Class members she seeks to represent. Plaintiff has retained counsel competent and experienced in the prosecution of complex class action and consumer litigation, and together Plaintiff and her counsel intend to prosecute this action vigorously for the benefit of the Class. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

52.    **Superiority – Fed. R. Civ. P. 23(b)(3):** A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of the claims of all Class members is impracticable. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts, in which individual litigation of hundreds of cases would proceed. Individual litigation would increase the expense and delay to all parties and the court system in resolving the legal and factual issues common to all Class members' claims. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

53.    The claims asserted in this action are additionally or alternatively certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) and/or 23(b)(2) because:

(a)    The prosecution of separate actions by numerous individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, thus establishing incompatible standards of conduct for Defendant;

(b)     The prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of non-party Class members or which would substantially impair ability to protect their interests; and

(c)     Defendant has acted or refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

54.     In the alternative, pursuant to Federal Rule of Civil Procedure 23(c)(4), the common questions of fact and law applicable in this action are appropriate for issue certification on behalf of the proposed Class.

## CLAIMS FOR RELIEF

### COUNT I
**Negligence**
**(On Behalf of the Nationwide Class and the New York Class)**

55.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

56.     Defendant manufactured, distributed, marketed, and sold its Pet Food Products to Plaintiff and Class members with full awareness of the purpose for which the Pet Food Products were to be used. Plaintiff and the Class members were within the foreseeable zone of risk of injury or other losses in the event Defendant's Pet Food Products were defective or contaminated or otherwise negligently formulated, manufactured, or produced, which risks Defendant knew or should have known.

57.     Defendant owed Plaintiff and Class members a duty of care to manufacture, distribute, and sell products that are non-contaminated and safe for consumption by Plaintiff's and Class Members' pets.

58.     Defendant breached its duties by, among other things: (1) failing to implement adequate preventive controls to prevent or minimize distribution of contaminated pet food; (2) failing to adequately control the hazard of aflatoxin in its finished products; and/or (3) failing to evaluate each known or reasonably foreseeable hazard for each type of food it manufactures, processes, packs or stores.

59.     As a result of Defendant's breaches and violations, Plaintiffs and Class members suffered harm.

60.     Defendant's negligence was a substantial factor in the harm caused to Plaintiffs and Class members.

61.     At all relevant times, Plaintiffs and members of the Class acted lawfully and with due care and did not contribute to the injuries suffered by its pets.

62.     Accordingly, Plaintiffs and members of the Class are entitled to damages and other appropriate relief, in an amount to be proven at trial.

## COUNT II
### Negligent Misrepresentation
### (On Behalf of the Nationwide Class and New York Class)

63.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

64.     Defendant's actions and omissions alleged herein constitute negligent misrepresentation.

65.     Defendant misrepresented material facts concerning the safety, suitability, and quality of its Pet Food Products, including that the Pet Food Products were suitable for pets, that they provided targeted nutrition and were 100% guaranteed for taste and nutrition.

66.    Defendant had no reasonable grounds for believing that its representations were true.

67.    Among other things, Defendant expressly and impliedly represented that its Products were safe and suitable for pet consumption. Defendant knew or should have known but failed to disclose that, contrary to its representations, its Pet Food Products contained dangerous levels of aflatoxin that would cause injury or death to pets.

68.    Defendant made such misrepresentations with the intent to induce Plaintiff and Class members to rely on its misrepresentations and purchase its Pet Food Products containing dangerous levels of aflatoxin.

69.    Plaintiff and Class members had no knowledge of the falsity of Defendant's representations and reasonably believed them to be true. In justified reliance on Defendant's misrepresentations, Plaintiff and Class members purchased and fed their pets the Pet Food Products containing dangerous levels of aflatoxin.

70.    As a direct and proximate consequence, Plaintiff and Class members suffered harm. Among other things, they would not have purchased Defendant's Pet Food Products, had they known of the presence, or the potential presence, of dangerous levels of aflatoxin.

71.    Plaintiff and Class members are therefore entitled to damages and relief, as prayed for hereunder.

## COUNT III
### Violation of New York General Business Law § 349
### (On Behalf of the New York Class)

72.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

73.    Plaintiff and the Class are "persons" within the meaning of N.Y. Gen. Bus. § 349(h).

74.    Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of N.Y. Gen. Bus. § 349(b).

75.    Under the New York Deceptive Acts & Practices Statute, "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service" are unlawful. N.Y. Gen. Bus. § 349.

76.    Defendant engaged in deceptive acts and practices in the conduct of business, trade, and commerce.

77.    Among other things, Defendant advertised and sold contaminated and adulterated Pet Food Products to Plaintiff and the Class. Defendant's advertising, including its packaging and labeling, are untrue or misleading and likely to deceive consumers in that Defendant represented the Pet Food Products: are suitable for animal consumption; provide for "Targeted Nutrition;" and 100% Guaranteed for Taste and Nutrition. Defendant failed to disclose the material fact that the Pet Food Products contain, or potentially contain, aflatoxin at unsafe and potentially lethal levels.

78.    Defendant's Pet Food Products are adulterated under N.Y. Agri & Mkts § 132, which provides that a commercial feed is adulterated if "[i]t bears or contains any poisonous or deleterious substance which may render it injurious to health" or "[i]ts composition or quality falls below or differs from that which it is purported or is represented to possess by its labeling."

79.    Defendant also made the following misleading statements on its website concerning Pet Food Products:

a. "Midwestern has quality control personnel and laboratories at each plant to test incoming ingredients and finished products. This ranges from managing guarantees, to testing things like degree of cook and microbial confirmation for release. All of our plants are FSMA-ready and follow the GMP regulations as put out through FSMA and the FDA. Additionally, all of our safety technicians follow all OSHA and state regulations."

b. "All SPORTMIX foods are designed to provide complete and balanced nutrition and meet Association of American Feed Control Officials (AAFCO) requirements."[14]

c. "When introducing a new product, Association of American Feed Control Officials (AAFCO) feeding trials are completed at a farm with an in-home atmosphere that is non-invasive, non-lethal and cage-free."[15]

80.    Defendant owed a duty to disclose material information to Plaintiff and the Class regarding the true characteristics, qualities, and ingredients of its Pet Food Products. Defendant violated its duty to disclose and failed to exercise due care when it manufactured, distributed, advertised, and sold its Pet Food Products to Plaintiff and the Class based on: (1) its exclusive knowledge of the ingredients, content, and sourcing materials of the Pet Food Products; (2) failing to disclose to Plaintiff and the Class that its Pet Food Products contain excessive levels of aflatoxin; and (3) failing to disclose that Defendant has not adequately tested its Pet Food Products prior to sale to ensure they are safe and fit for pets' consumption.

81.    Plaintiff and the Class were unaware, and did not have reasonable means of discovering, the material facts that Defendant both misrepresented and failed to disclose.

---

[14] https://www.sportmix.com/faq/
[15] *Id.*

82.     Defendant's failure to disclose material facts that its Pet Food Products do not conform to the products' labels, packaging, advertising, and statements was misleading in a material respect because a reasonable consumer acting reasonably under the circumstances would have been misled by Defendant's conduct.

83.     Defendant's failure to disclose these material facts and its other deceptive conduct induced Plaintiff and the Class to purchase the Pet Food Products. If Plaintiff had known that the Products contained excessive levels of aflatoxins that were unsafe for her pet, she would not have purchased the Products.

84.     These acts and practices were consumer-oriented because they had a broad impact on consumers at large, affecting all purchasers of the Contaminated Dog Food, including purchasers in the State of New York.

85.     As a direct and proximate result of Defendant's unlawful methods, acts, and practices, Plaintiff and the Class lost money and have suffered injury.

86.     Defendant's acts and practices were willful and knowing.

87.     Plaintiff and the Class are entitled to injunctive relief, recovery of actual damages or fifty dollars per violation (whichever is greater), treble damages up to one thousand dollars, and their reasonable costs and attorneys' fees. *See* N.Y. Gen. Bus. § 349(h).

## COUNT IV
### Violation of New York General Business Law § 350
### (On Behalf of the New York Class)

88.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

89.     Defendant's labeling and advertisements contain the following untrue and materially misleading statements, representing that its Pet Food Products are:

90.    Defendant's Pet Food Products do not conform to Defendant's statements and representations in advertising because they contain, or potentially contain, excessive levels of aflatoxin.

91.    Defendant made these material, untrue, and misleading statements and misrepresentations in their advertising and the Pet Food Products' packaging and labeling, including that the food constitutes guaranteed nutrition and is nutritious. Defendants made these untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

92.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large, including purchasers of Pet Food Products in the State of New York. Moreover, all consumers purchasing Pet Food Products were and continue to be exposed to Defendant's material misrepresentations.

93.    Plaintiff and the Class were induced to purchase the Pet Food Products by Defendant's advertising, packaging, and labeling. They have been injured as they relied upon the labeling, packaging, and advertising in making their purchases of the Pet Food Products, which did not have the characteristics set forth in Defendant's advertising. Accordingly, Plaintiff and the Class lost money and suffered injury by Defendant's advertising and misrepresentations.

94.    As a result of Defendant's unlawful and deceptive acts and practices, Plaintiff and the Class are entitled to monetary, compensatory, treble, and punitive damages; injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conducts; and interest, attorneys' fees, and costs.

## COUNT V
### Breach of Express Warranty
### (Brought on Behalf of the Nationwide and New York Classes)

95.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

96.    Defendant warranted its products as "Targeted Nutrition for Dogs" and "100% Guaranteed for Taste and Nutrition."

97.    Defendant breached this express warranty by selling to Plaintiff and Class members Pet Food Products known to be contaminated by the presence of aflatoxin so that it was not nutritious, despite its guarantee, and which was unsuited for its ordinary and intended purpose.

98.    As a result of Defendant's actions, Plaintiff and Class members have suffered economic damages including but not limited to Pet Food Product costs, veterinary bills, other medical expenses, and replacement pet food.

99.    Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

## COUNT VI
### Breach of Implied Warranty
### (Brought on Behalf of the Nationwide and New York Classes)

100.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

101.    A warranty that Defendant's Pet Food Products were in merchantable condition is implied by law.

102.    The Pet Food Products, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which pet food is used. Specifically, Defendant's Pet Food Products are inherently defective in that they are contaminated with aflatoxin and thus cannot safely be consumed by pets.

103.    As a direct and proximate result of Defendant's breaches of the implied warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT VII**
**Unjust Enrichment**
**(On Behalf of the Nationwide Class and New York Class)**

104.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

105.    As a direct, proximate, and foreseeable result of Defendant's acts and otherwise wrongful conduct, Plaintiff and the Class members conferred a benefit on Defendant and consequently suffered damages. Defendant profited and benefited from the sale of the Pet Food Products, even as the Pet Food Products caused Plaintiff and the Class members to incur damages.

106.    Defendant voluntarily accepted and retained these profits and benefits, derived from Plaintiff and Class members, with full knowledge and awareness that as a result of Defendant's wrongdoing, consumers including Plaintiff and Class members were not receiving Pet Food Products of the quality, nature, fitness, or value that had been represented by Defendant or that reasonable consumers expected. Plaintiff and the Class members purchased pet food that they expected would be safe and healthy for their pets and instead have now had to endure the serious injury, illness, veterinary expenses, and/or death of their beloved pets.

107.    Defendant continues to possess monies paid by Plaintiff and Class members to which Defendant is not entitled to have received.

108.    Under the circumstances it would be inequitable for Defendant to retain the benefits conferred upon it and Defendant's retention of these benefits violates fundamental principles of justice, equity, and good conscience. If Plaintiffs and Class members had known the true nature of the Pet Food Products, they would not have paid money for them or would have paid less.

109.    Plaintiff and Class members hereby seek the disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the proposed Class, respectfully requests that this Court enter an Order:

(a)    Certifying the proposed Class pursuant to Federal Rule of Civil Procedure 23, and appointing Plaintiff as the representative of the Class and her counsel as Class Counsel;

(b)    Awarding Plaintiff and the Class compensatory damages in an amount exceeding $5,000,000 according to proof;

(c)    Awarding Plaintiff and the Class actual damages according to proof;

(d)    Awarding Plaintiff and the Class declaratory and equitable relief, including restitution and disgorgement, and the implementation of adequate safety procedures and measures;

(e)    Enjoining Defendant from continuing the illegal activities alleged herein;

(f)    Awarding Plaintiff and the Class their costs of suit, including expert witness fees;

(g)    Awarding Plaintiff and the Class reasonable attorneys' fees and expenses as provided by law;

(h)    Awarding pre-judgment and post-judgment interest, to the extent allowable by law; and

(i)    Granting such any other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 16, 2021                              Respectfully submitted,

_/s/Kathleen A. DeLaney_
Kathleen A. DeLaney
**DELANEY & DELANEY LLC**
3646 North Washington Blvd.
Indianapolis, Indiana 46205
Telephone: (317) 920-0400
Facsimile: (317) 920-0404
kathleen@delaneylaw.net

Kenneth A. Wexler (_pro hac_ forthcoming)
Michelle Lukic (_pro hac_ forthcoming)
**WEXLER WALLACE LLP**
55 W. Monroe Street, Suite 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
kaw@wexlerwallace.com
mp@wexlerwallace.com

Mark J. Tamblyn (_pro hac_ forthcoming)
**WEXLER WALLACE LLP**
333 University Avenue, Suite 200
Sacramento, California 95825
Telephone: (916) 565-7692

Facsimile: (312) 346-0022
mjt@wexlerwallace.com

Daniel E. Gustafson (*pro hac* forthcoming)
Raina Borelli (*pro hac* forthcoming)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
rborelli@gustafsongluek.com

Charles LaDuca (*pro hac* forthcoming)
Katherine Van Dyck (*pro hac* forthcoming)
**CUNEO GILBERT & LADUCA LLP**
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
charles@cuneolaw.com
kvandyck@cuneolaw.com

Robert K. Shelquist (*pro hac* forthcoming)
Rebecca A. Peterson (*pro hac* forthcoming)
**LOCKGRIDGE GRINDAL NAUEN P.L.L.P**
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
rkshelquist@locklaw.com
rapeterson@locklaw.com

Joseph J. DePalma (*pro hac* forthcoming)
Susana Cruz Hodge (*pro hac* forthcoming)
**LITE DEPALMA GREENBERG & AFANADOR**
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
jdepalma@litedepalma.com
scruzhodge@litedepalma.com

*Attorneys for Plaintiff and the Proposed Class*